# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL CASE NO. 1:09cv233

| | |
|---|---|
| WAYMAN CALDWELL, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>)<br>_____ ) | **MEMORANDUM OF**<br>**DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 12] and the Defendant's Motion for Judgment on the Pleadings [Doc. 14].

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and Disability Insurance Benefits on May 18, 2006, alleging disability with an onset of January 31, 2004, which was amended at the hearing to September 28, 2005. [T. 105, 23]. Plaintiff's claims were denied initially and on reconsideration. [T. 60-3, 65-71]. A hearing was held before Administrative Law Judge (hereinafter, "ALJ") Robin R. Palenske on December 3, 2008, at which

Plaintiff, who was represented by counsel, appeared and testified. [T. 21-51]. On February 10, 2009, the ALJ issued a decision denying the Plaintiff benefits. [T. 9-20]. The Appeals Council entered additional evidence into the record, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-5]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means

2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§404.1520, 416.920. Second, the applicant must show a severe impairment. If the applicant does not show any impairment or combination thereof which significantly limits the physical or mental ability to perform work activities, then no severe impairment is shown and the applicant is not disabled. Id. Third, if the impairment meets

3

or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the applicant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV.  THE ALJ'S DECISION

On February 10, 2009, the ALJ issued a decision denying the Plaintiff's claim. [T. 9-20]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was June 30, 2006. [T. 11]. He then found that Plaintiff had not engaged in any substantial gainful activity since his amended alleged onset date of September 28, 2005. [T. 11]. The ALJ then found the following impairments to be severe impairments: limited intellectual functioning, bilateral knee osteoarthritis, history of right femur fracture, cervical spine disorder, right trochanteric bursitis, hiatal hernia, and left shoulder arthritis. [T. 11]. The ALJ concluded, however, that the severe impairments

4

did not meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [T. 20].

The ALJ then assessed the Plaintiff's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can stand/walk 6 hours of an 8-hour workday and sit 6 hours of an 8-hour workday; lift/carry 20 pounds occasionally and 10 pounds frequently; with occasional reaching overhead with his left upper extremity; he can occasionally push/pull with his right lower extremity; he can occasionally climb stairs and ramps, with no climbing ladders, ropes or scaffolds; and he can occasionally kneel, crouch, and crawl; he can only do simple, routine repetitive tasks; and he is functionally illiterate and right hand dominant.

[T. 14].

The ALJ further determined that Plaintiff was unable to perform his past relevant work. [T. 18]. Relying upon the testimony of the vocational expert (VE) who testified at Plaintiff's hearing, the ALJ determined that jobs existed in significant numbers within the unskilled light occupational base that Plaintiff could perform. [T. 19-20]. Accordingly, the ALJ concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the amended onset date of September 28, 2005 through the date of the ALJ's decision. [T. 20].

## V. DISCUSSION

Plaintiff raises two assignments of error with respect to the ALJ's decision. First, Plaintiff argues that the ALJ erred in failing to conclude that Plaintiff qualifies for benefits pursuant to §12.05C of the Listings. Second, Plaintiff contends that the ALJ violated Social Security Ruling 00-4p by failing to ask the VE regarding any conflicts between her testimony and the Dictionary of Occupational Titles (DOT).

### A. Substantial evidence supports the ALJ's decision that Plaintiff did not satisfy §12.05C of the Listings.

In order to be found disabled under §12.05 of the Listings, a claimant must meet two requirements. First, as set forth in the introductory paragraph of § 12.05, the claimant must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," that is, prior to the age of 22. 20 C.F.R. pt. 404, subpt. P, app. 1, §12.05. Second, the claimant must meet one of the four requirements described in subparagraphs A through D of §12.05. Id. As is relevant to the present proceeding, § 12.05C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C. Thus, in order to Plaintiff to be considered disabled under §12.05C, the Plaintiff must satisfy

both the diagnostic description in the introductory paragraph *and* the set of criteria set forth in subparagraph C. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.

In the present case, the evidence reveals that Plaintiff's IQ scores consistently fell between 60 and 70. Further, the ALJ found that Plaintiff suffered multiple severe, physical impairments that imposed meaningful restrictions on his RFC. In light of the evidence of record and the ALJ's findings, the Commissioner concedes that Plaintiff has satisfied the set of criteria set forth in subparagraph C. [Doc. 14-1 at 5-6]. Thus, the issue becomes whether there is substantial evidence to support the ALJ's determination that Plaintiff failed to satisfy the diagnostic description in the introductory paragraph of §12.05.

In this regard, the ALJ found that Plaintiff was "not really deficient with regard to adaptive functioning." [T.17]. "Adaptive functioning" refers to an individual's skills with respect to "communication, self care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, and safety." Diagnostic and Statistical Manual of Mental Disorders (DSM) 41 (4th ed. text rev. 2007).[1]

---

[1] The federal regulations explicitly allow the Social Security Administration to rely on the DSM, and other professional standard measures, such as the Vineland Adaptive Behavior Scales or the American Association on Mental Retardation Adaptive Behavior Scale, in assessing a claimant's adaptive functioning. See 67 Fed.Reg. at 20,022.

In determining that Plaintiff did not have any significant deficiencies in adaptive functioning, the ALJ considered the Plaintiff's own testimony as well as the medical opinions of Dr. Richard Welser, a consultative examiner, and Dr. Bonnie Gregory and Dr. Ben Williamson, state agency psychologists.

Specifically, the ALJ found that the evidence established that Plaintiff had "good communication, self-care home care skills" and "social/ interpersonal skills." [T. 12]. She found that Plaintiff was capable of using community resources and helping his sister to care for his elderly mother." [Id.]. The ALJ also observed that Plaintiff, throughout his work history, had "low, but consistent earnings," and that Dr. Welser opined that Plaintiff was "capable of simple, routine, repetitive tasks." [Id.].

With respect to daily activities, the ALJ noted the undisputed evidence that Plaintiff helped care for his elderly mother; prepared his own breakfast; did his own laundry; changed his bed; swept the floor; and vacuumed. [T. 13, 37-38, 40-42; see also 147]. With regard to Plaintiff's social functioning, the ALJ noted that Plaintiff spent time with his family [T. 13, 37-38], and also went out to eat with friends [T. 13, 40]. Dr. Welser reported that Plaintiff had no difficulties relating to others, including coworkers and supervisors. [T. 13, 15, 213, 215]. The ALJ acknowledged that Plaintiff could not read or write and that he had attended special education classes. [T. 13].

8

With respect to concentration, persistence, or pace, the ALJ noted Plaintiff's low IQ score and that he appeared unable to manage his own finances. [Id.]. The ALJ also noted, however, that Dr. Welser reported that Plaintiff could "perform simple, repetitive tasks" and that he could seemingly "tolerate the stress and pressures associated with day-to-day work activity." [T. 13, 213, 215].

The Plaintiff does not dispute any of these findings, but rather argues that it was improper for the ALJ "to rely on the existence of previous work history to prove non-disability where the section 12.05C criteria are met," citing Luckey v. Dep't of HHS, 890 F.2d 666 (4th Cir. 1989) and Murphy v. Bowen, 810 F.2d 433 (4th Cir. 1987). [Doc. 13 at 6]. Plaintiff misapprehends the holding of those cases. In both Luckey and Murphy, the Court held that it was error for the Secretary to rely on a claimant's work history in order to prove non-disability. Luckey, 890 F.2d at 669, Murphy, 810 F.2d at 438. In so holding, the Court reasoned that where a claimant meets the requirements of a listing, such as §12.05, it is irrelevant whether he had nonetheless tried to work in the past. See, Luckey, 890 F.2d at 669 ("When a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap.")(quoting Murphy, 810 F.2d at 438). In the present case, however, unlike in Luckey and Murphy,

Plaintiff did not meet the listing at issue because he failed to meet the adaptive functioning element. The DSM explicitly enumerates "work" as a component of adaptive functioning. Therefore, the ALJ properly considered Plaintiff's prior work experience in the context of considering whether the Plaintiff met the first prong of §12.05. For this reason Plaintiff's argument is without merit.

Upon careful review of the record, the Court concludes that Plaintiff's work history, activities of daily living, and memory capacity provide substantial evidence of higher actual adaptive functioning than the IQ scores suggest. Accordingly, the Court concludes that there is substantial evidence to support the ALJ's conclusion that Plaintiff did not meet the adaptive functioning element of Listing 12.05(C). Plaintiff's first assignment of error, therefore, is overruled.

**B.     The ALJ properly evaluated the Vocational Expert's testimony.**

Social Security Ruling 00-4p, on which Plaintiff relies, governs how an ALJ may use vocational expert testimony in his decision: "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled." Id. at *4. The adjudicator must explain how he or she resolved the

conflict irrespective of how the conflict was identified. Id.

The ALJ asked the standard question used to demonstrate consistency between a VE's testimony and the DOT, and received the standard affirmative answer. Plaintiff, however, takes issue with the timing of this question. The ALJ asked it before she asked, or the VE had answered, any of the ALJ's hypothetical questions. Indeed, the question was asked before the VE performed the customary preliminary classification of Plaintiff's past work. [T. 47-8]. Such timing was disapproved in Smith v. Commissioner of Social Sec., 2010 WL 1838366 (N.D.Ind. 2010).

> The Ruling provides that the ALJ is to "[a]sk the VE ... if the evidence he or she has provided conflicts with ... the DOT." SSR 00-4p at *4 (emphasis added). The use of the past tense suggests that the ALJ is to question the VE about the consistency of her testimony with the DOT after she gives her substantive testimony. Moreover, the case law requires the ALJ to inquire into the conflict when it is "apparent," which could not be determined until the testimony is taken.

Smith 2010 WL 1838366 at *14. The ALJ complied with the substance of SSR 00-4p by directing the VE to identify any conflicts between her testimony and the DOT. Moreover, Plaintiff has not identified any conflict between the VE testimony provided at Plaintiff's hearing and any provision in the DOT. Absent such conflict, Plaintiff is not entitled to any relief, regardless of whether there was any technical error on the part of the ALJ. See Fisher v. Barnhart,

11

181 F. App'x 359, 365-66 (4th Cir. 2006).

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards and that there is substantial evidence to support the ALJ's finding of no disability from the date of onset to the date of his decision.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 14] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 12] is **DENIED.**

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: October 18, 2011

Martin Reidinger
United States District Judge